IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**PLAZA CAROLINA MALL, L.P.,**

**Plaintiff**

**v.**                                             **CIVIL NO. 13-1264 (GAG)**

**MUNICIPALITY OF BARCELONETA,**

**Defendant.**

## OPINION AND ORDER

Plaza Carolina Mall, L.P. ("Plaintiff") filed the present action against the Municipality of Barceloneta (the "Municipality") seeking to enforce a contract, the Development Incentive Agreement ("DIA"), whereby the Municipality granted a multi-million dollar development incentive grant to Plaintiff's predecessor in interest to develop and expand a shopping center located within the Municipality. In response, the Municipality argued that the DIA was null and void because it is contrary to applicable law and, as such, refused to make the payments under the contract. On April 8, 2014, the parties filed cross-motions for summary judgment. (Docket Nos. 34 & 37.) The court issued an Opinion and Order ruling on both motions. (Docket No. 85); Plaza Carolina Mall, L.P. v. Municipality of Barceloneta, Civ. No. 13-1264 GAG, 2015 WL 1205979 (D.P.R. Mar. 16, 2015). Therein, the court denied Plaintiff's motion and granted in part and denied in part the Municipality's motion and basically found that the DIA and municipal ordinances which authorized its execution were contrary to applicable local legislation; therefore, it was null, void and unenforceable. Id. Accordingly, judgment was entered dismissing all of Plaintiff's claims against the Municipality. (Docket No. 86.) Presently before the court is

**Civil No. 13-1264 (GAG)**

Plaintiff's motion to reconsider the court's ruling and alter or amend the judgment entered dismissing the case. (Docket No. 102.) In turn, the Municipality opposes. (Docket No. 103.)

**I. Standard of Review**

A motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the court. Villanueva-Mendez v. Vazquez, 360 F. Supp. 2d 320, 322 (D.P.R. 2005). In summation, "[a] party cannot use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that 'could, and should, have been made before judgment issued.'" See Soto-Padró v. Public Buildings Authority, et al., 675 F.3d 1, 9 (1st Cir. 2012). It is also a long-standing rule that motions for reconsideration cannot be used to bring forth new arguments. See Nat'l Metal Finishing Co., Inc. v. Barclays Am./Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990) (holding that motions for reconsideration may not be used "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier"). These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law. See Rivera Surillo & Co. v. Falconer Glass. Indus. Inc., 37 F.3d 25, 29 (1st Cir. 1994).

In sum, for a motion for reconsideration to be granted, the court recognizes only three possible grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law." See Torres v. Gonzalez, 980 F. Supp. 2d 143, 147 (D.P.R. 2013). "In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 2810.1 (2d ed.) (2012) (emphasis added); Rivera v. Meléndez, 291 F.R.D. 21, 23 (D.P.R. 2013) (denying motion for reconsideration when

**Civil No. 13-1264 (GAG)**

"plaintiff's clear intention is to achieve yet another bite at the apple, and continue this litigation by ignoring and/or refusing this Court's ruling").

## II. Discussion

After carefully examining Plaintiff's Motion for Reconsideration, the court fathoms that Plaintiff's clear objective is to restate and re-litigate the arguments it has previously raised and have already been rejected by the court. The crux of this case—and most of the arguments Plaintiff once again advances—lies in the legality and enforceability of the DIA, which the court ruled upon in its Opinion and Order at Docket No. 85. As such, upon careful review of Plaintiff's motion, the Municipality's opposition, and the court's prior determination, Plaintiff's motion to reconsider and alter or amend judgment at Docket No. 102 is hereby **DENIED** because the court finds that Plaintiff has failed to identify any manifest or clear errors of law or fact, which the court must correct, present newly discovered evidence, or demonstrate the court that there is an intervening change in controlling law. See Rivera Surillo, 37 F.3d at 29. The court briefly addresses the following arguments.

    a. The Court's Jurisdiction

Concerning Plaintiff's arguments that this court erred when it did not formally decide, but instead assumed that diversity jurisdiction existed, and proceeded to rule on the merits of the case, the court finds that it did not make such error. At the outset, the court notes that it had to discuss the lack-of-diversity jurisdiction issue at summary judgment because, throughout the proceedings, Plaintiff continuously failed to disclose the requisite information to establish the existence of diversity jurisdiction, namely, the citizenship of one its partners, Simon P.C. Inc. Plaintiff finally proffered the undisclosed information in response to the Municipality's lack-of-diversity

jurisdiction argument at summary judgment. (Docket No. 85 at 13-14.) As such, the jurisdiction issue in this case was entirely created by Plaintiff's repeated nondisclosure.

In any event, Plaintiff replied to the Municipality's request for dismissal averring that the undisclosed information had been "inadvertently omitted" but that it was now being supplied in its opposition to summary judgment; therefore, the "minor gap" that remained in the process of confirming the existence of diversity jurisdiction had finally been submitted. Id. at 14. The court found that Plaintiff was appraised and reminded by the Municipality on various occasions that said information had yet been disclosed thus a jurisdiction issue was pending, but Plaintiff failed to produce it. In turn, the court held that disclosing the missing information which pertained to the threshold matter of jurisdiction at summary judgment, after discovery had concluded, was improper. Accordingly, the court found that Plaintiff's conduct constituted discovery violations and held that when faced with these types of violations, it "possesses wide latitude in formulating the appropriate sanction." (Docket No. 85 at 14-18.) Sheek v. Asia Badger, Inc., 235 F.3d 687, 694 (1st Cir. 2000) (citing Poulin v. Greer, 18 F.3d 979, 984 (1st Cir. 1994)).

In its ample discretion to impose the appropriate sanction—and mindful of its resources, the stage of the proceedings, the merits of the parties' arguments at summary judgment, and the implications of preclusion—the court opted not to exclude the belatedly proffered information, but rather admit the late disclosure.[1] (Docket No. 85 at 18.) If the information was precluded, Plaintiff could not prove that diversity jurisdiction existed. Id. More importantly, the Municipality's argument in favor of dismissal was anchored in Plaintiff's evidentiary "oversight," rather than a facial challenge to complete diversity. Id. The court thus noted that dismissing the case by precluding this information would prove futile as Plaintiff would simply re-file the case

---

[1] The court, however, noted that it would address via separate order the issuance of appropriate sanctions for discovery violations, after affording the parties an opportunity to be heard. (Docket No. 85 at 20.)

4

**Civil No. 13-1264 (GAG)**

and confirm the existence of jurisdiction using the same information belatedly produced here. Id. The court also considered the fact that the Municipality objected to Plaintiff's production for its tardiness alone, nevertheless, the Municipality did not object to the veracity of said information or challenged the evidence itself. As such, the court granted Plaintiff a "get out of jail free card" on this issue. Id.

Accordingly, the court found that "because this case may be disposed of in favor of the party raising the want-of-jurisdiction argument on other grounds, and **because the jurisdiction issue falls on Plaintiff's technical discovery flub, which it purports to have cured**, the court assumes that jurisdiction was established." See U.S. v. Augenblick, 393 U.S. 348, 349-352 (1969).[2] (Docket No. 85 at 19.) The court further held that deciding otherwise would entail a waste of the court and the parties' time and resources, and that "'even on questions of a court's adjudicatory authority in particular, salvage operations are ordinarily preferable to the wrecking ball.'" Grupo Dataflux v. Atlas Global Grp., 541 U.S. 567, 592 (2004). (Ginsburg, J., dissenting). (See Docket No. 85 at 19-20.) In doing so, the court factored in that the Municipality did **not** contest the information provided by Plaintiff or that said information finally established the existence of diversity jurisdiction—the principal place of business of Simon PC, Inc.—but only argued that Plaintiff could not use said information pursuant to Fed. R. Civ. P. 37 because it was untimely disclosed. (Id. at 19.) With no challenge as to the content of the jurisdiction information disclosed by Plaintiff, the court took it at face value. In other words, it found that the information

---

[2] There is Supreme Court precedent that supports the notion that a court can assume jurisdiction. See e.g., Norton v. Mathews, 427 U.S. 524, 532 (1976); Philbrook v. Glodgett, 421 U.S. 707, 720–722 (1975) (opinion of Rehnquist, J. declining to reach "subtle and complex" jurisdictional issue and assuming that jurisdiction existed); Secretary of the Navy v. Avrech, 418 U.S. 676 (1974); United States v. Augenblick, 393 U.S. 348, 351–352(1969) (assuming, *arguendo,* that jurisdiction existed)). Since then, the Steel Co. Court, however, questioned this approach to "hypothetical jurisdiction". Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). The Court required courts to address Article III jurisdictional questions prior to reaching the merits of a case in order to prevent appellate courts from rendering advisory opinions. See id. at 101. See also Seale v. I.N.S., 323 F.3d 150, 154-55 (1st Cir. 2003).

**Civil No. 13-1264 (GAG)**

untimely disclosed by Plaintiff cured the jurisdictional defect. The court thus admitted Plaintiff's late proffer as sufficiently establishing diversity jurisdiction, rather than excluding it under the "mandatory preclusion" guise of Rule 37. In view of the above, the court dismissed the Municipality's request to dismiss the case for lack of diversity jurisdiction.

As to Plaintiff's contention that the court erred in assuming that jurisdiction existed because this precedent has been rejected, the court finds it did not commit such error. The court made clear that jurisdiction was a matter of first order and that as a court of limited jurisdiction, it "may **not** presume the existence of subject matter jurisdiction, but, rather, must appraise [its] own authority to hear and determine particular cases." (Docket No. 85 at 15). See Cusumano v. Microsoft Corp.,162 F.3d 708, 712 (1st Cir. 1998). The court found that Plaintiff sufficiently established the existence of jurisdiction with the information belatedly produced. In any event, after examining the merits of the case, the court found that the case could alternatively be resolved on the merits in favor of the Municipality—like the jurisdiction-discovery issue if the court, in purity and under strict construction of Fed. R. Civ. P. 37, excluded the evidence.

Plaintiff's argument that courts are always foreclosed from assuming the existence of jurisdiction, in certain circumstances, is without merit. The First Circuit in Seale made clear that, despite sweeping language, Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998), "does **not** create an **absolute rule"** against bypassing questions of a jurisdictional nature. Seale v. I.N.S., 323 F.3d 150, 154-55 (1st Cir. 2003); see Parella v. Ret. Bd. of the R.I. Employees' Ret. Sys., 173 F.3d 46, 53–54 (1st Cir.1999). Seale held that "the Steel Co. majority distinguished, rather than overruled, earlier precedent in which the Court had deferred questions of jurisdiction and proceeded directly to the merits." Seale, 323 F. 3d at 155. In said case, the First Circuit **assumed** subject matter jurisdiction "because the petitioner clearly loses on the merits of his claims. And of

course, if the district court lacked jurisdiction, petitioners claim will, of necessity, be dismissed." Id. at 157.

The First Circuit has been consistent with this approach.  In Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 59 (1st Cir. 2003), like in Seale, the First Circuit held that Steel Co. does **not** require it to always reach the jurisdictional question; thus, jurisdiction did not have to be resolved for the court to enter a final ruling on the merits because the case was resolved in favor of the same party.  As recent as in 2008, in Greenwood ex rel. Estate of Greenwood v. New Hampshire Pub. Utilities Comm'n, 527 F.3d 8, 13 (1st Cir. 2008), the First Circuit held that "[w]hile we would ordinarily reach the jurisdictional question first, we choose to resolve this case on other grounds" and held that "[a]lthough the Supreme Court in Steel Co. generally barred the practice of 'hypothetical jurisdiction,' this circuit has treated Steel Co.'s admonition as having limits."  See McBee v. Delica Co., 417 F.3d 107, 127 (1st Cir.2005); Parella, 173 F.3d at 53-56.  The First Circuit further held that that it has consistently interpreted the Steel Co. rule "as applying in its strict form only to issues going to Article III requirements." Greenwood ex rel, 527 F.3d at 13; see McBee, 417 F.3d at 127.

In view of the above, there is clear Supreme Court and First Circuit precedent enabling courts to reserve complex jurisdictional questions in certain instances, like when the case can alternatively be resolved on clearer and more certain grounds in favor of the party challenging jurisdiction and when the issue does not touch on Article III jurisdiction.  As such, where as in this case, any concerns over jurisdiction are a matter of statutory interpretation like diversity jurisdiction pursuant to 28 U.S.C. § 1332 and not an Article III issue, the court could bypass the jurisdictional inquiry.  See Greenwood ex rel, 527 F.3d at 13; see, e.g., Cozza v. Network Assocs.,

**Civil No. 13-1264 (GAG)**

362 F.3d 12, 15 (1st Cir. 2004); Restoration Pres., 325 F.3d at 59-60; United States v. Woods, 210 F.3d 70, 74 n.2 (1st Cir. 2000); Parella, 173 F.3d at 53-56.

In sum, the court did not err by admitting Plaintiff's late proffer of undisclosed information, which finally proved complete diversity between the parties, and, in turn, finding that diversity jurisdiction had been established and then turning to the merits of the case. In any case, a court can assume the existence of jurisdiction in consonance with Supreme Court and First Circuit precedent in cases such as this one because here the information untimely disclosed established diversity jurisdiction and because an examination of the merits of the parties' contentions confirmed that the case, if dismissed for lack-of-jurisdiction for Plaintiff's discovery "oversight" or ruled upon on the merits, would be decided in favor of the same party: the Municipality.

      b.  Claims Concerning the DIA and its Legality

As to Plaintiff's claims that the court erred in: (1) interpreting the language of the DIA; (2) interpreting the language of Section 6189 of the Puerto Rico Internal Revenue Code; (3) finding that the DIA violates Act No. 81, or (4) finding that the municipal ordinances which authorized the execution of the DIA contravene applicable legislation, the court rejects these arguments because they are all the same arguments that have been litigated and decided by the court. (See Docket No. 85.) Aside from repeating old arguments previously rejected by the court, the court finds that Plaintiff does not point out any manifest errors of law or fact, present newly discovered evidence, or show that there is an intervening change in law. See Rivera Surillo, 37 F.3d at 29.

The court need not, yet again, delve into its reasoning in further detail, because it thoroughly explained it in its Opinion and Order at Docket No. 85, and Plaintiff fails to raise any arguments that persuade the court to abandon said reasoning at this time. Plaintiff does not bring to the court's attention any intervening change in law, does not introduce new evidence

unavailable at the time the motion for summary judgment was filed, and does not point out a clear legal error in the Opinion and Order subject to correction. Instead, Plaintiff's motion simply protests the court's earlier ruling. See Torres, 980 F. Supp. 2d at 147. Plaintiff's Motion for Reconsideration does not come close to meeting any of the valid grounds for relief of a Fed. R. Civ. P. 59(e) motion; rather, it rehashes the exact arguments and reasoning already rejected by the court. Soto-Padró, 675 F.3d at 9. Plaintiff's arguments concerning the DIA (Docket No. 102 at 5-15) are repetitions of arguments that were already raised and rebuffed at summary judgment, and so the court has no choice but to reject these recycled arguments. See Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (denying relief because "motion for reconsideration did no more than reiterate the arguments [litigant] earlier had advanced").

  c. Use of Extrinsic Evidence

As a final note the court discusses Plaintiff's argument that the court incorrectly gave undue weight to extrinsic evidence, such as letters by its counsel, municipal ordinances, and the Puerto Rico Comptroller's findings, when interpreting the language of the DIA and applicable law. (Docket No. 102 at 3.) The court finds that it did not commit such an error and Plaintiff's argument lacks merit.

After a thorough examination of the DIA, the court undoubtedly held that its language and express terms were clear in that the Municipality committed IVUM funds to pay the development incentive grant. (Docket No. 85 at 25.) The court held: "[r]eading the DIA's provisions in relation to one another and considering the agreement as a whole, the court finds that **the DIA is clear and unambiguous on its face** in that the Municipality agreed to pay the incentive grant with funds generated from IVUM collections levied on by sales from the tenants of Phase II of the outlet mall." Id. The court further held that "a comprehensive reading of the DIA indicates that it clearly

compels the Municipality to pay the incentive grant . . . from money directly generated from IVUM collections until the grant was paid in full." (Docket No. 85 at 25-26.) As such, the court found that the DIA is clear and unequivocal in that it committed IVUM funds to pay the development incentive grant, and, accordingly, "the literal terms of the contract will be observed." Id; see tit. 31, § 3471; Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 852 F. Supp. 2d 208, 217 (D.P.R. 2012).

The court arrived at this conclusion exclusively grounded on the language of the DIA itself, and, as such, it did **not** rely on extrinsic evidence, as Plaintiff erroneously suggests. (See Docket No. 85 at 25-26) (finding that "because the DIA is clear, the court must **not** turn to the intention of the contracting parties or extrinsic evidence."). Though the court found that the DIA's language was clear and left no doubt that the incentive grant was to be paid with IVUM collections, which the court found contravened applicable legislation, the court, nevertheless addressed the argument in the alternative, as if the DIA's express term were unclear. In other words, the court took on a different posture, **for the sake of argument**, and supposed that the DIA's terms were not clear and that Plaintiff was correct in its contention that the incentive grant was payable from general funds, despite already rejecting this reasoning.

In assuming, **arguendo**, that the DIA was ambiguous—though the court had found it was **not**—the court turned to extrinsic evidence and the intention of the parties. Exec. Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir.1995) ("[T]o consider extrinsic evidence at all, the court must first find the relevant terms of the agreement unclear."); Yordan v. Burleigh Point, Ltd., 552 F.Supp.2d 200, 204 (D.P.R. 2007) ("When a contract is ambiguous, extrinsic evidence may be considered to determine the intention of the parties."). In turn, the court looked at letters sent by Plaintiff's counsel to the Municipality which reinforced the fact that the payments

**Civil No. 13-1264 (GAG)**

under the DIA would be derived from IVUM funds, bolstering the court's conclusion.[3] The court found that, "[p]lainly, the parties' understanding that the incentive grant is payable with IVUM revenues is apparent." (Docket No. 85 at 26.) The court thus found that, "even **assuming *arguendo*** that the DIA's terms are **not** clear, so the court would turn to the parties' intentions, the intention of the parties is evident—the incentive grant shall be paid from IVUM collections." Id. More so, the court noted that the findings by the Puerto Rico Comptroller also reinforced the its decision.[4] As a result, the court's alternative inquiry further strengthened its determination that "[t]he contractual language of the DIA is clear—the parties agreed that the incentive grant was to be paid with IVUM revenues." Id. at 27.

### III. Conclusion

For the foregoing reasons, the court **DENIES** Plaintiff's motion to reconsider and alter judgment at Docket No. 102 and reiterates its prior determination at Docket No. 85.

**SO ORDERED.**

In San Juan, Puerto Rico this 9th day of July, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[3] Plaintiff attacks the court's alternative reasoning, which discussed the parties' intent. Specifically, Plaintiff attacks the analysis of post-DIA letters sent by Plaintiff's counsel because they "do not speak to what the parties actually negotiated, agreed, and/or intended to agree" several years before. (Docket No. 102 at 10.) The court did not err in this respect because when assessing the contracting parties' intentions, "[a]ttention should be paid to the actions of the contracting parties, during **and after** entering into the agreement." P.R. LAWS ANN. tit. 31, § 3472; Mercado-Salinas, 852 F. Supp. 2d at 217.

[4] Plaintiff also claims that the court should not have given any weight to the Puerto Rico Comptroller's ("Comptroller") findings. (Docket No. 102 at 10.) The court had made clear that the Comptroller's findings and recommendations "lack a binding character." (See Docket No. 85 at 27); Asoc. Alcaldes v. Contralor, 176 P.R. Dec. 150, 163 (2009). The court expressly recognized that it was not bound by the Comptroller's conclusions and did not rely on her fact findings; rather, the court made its own investigation and analysis of the facts and the law governing the case. Having conducted its independent analysis, it turned out that the court's determination was consistent with the Comptroller's findings. (Docket No. 85 at 27.) Accordingly, the court did not give undue weight or deference to the Comptroller's findings and legal conclusions, and, therefore, did not err in this respect.