IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PLAZA CAROLINA MALL, L.P.,

Plaintiff

v.                                                                 CIVIL NO. 13-1264 (GAG)

MUNICIPALITY OF BARCELONETA,

Defendant.

**OPINION AND ORDER**

On March 16, 2015, the court ruled on the parties' cross-motions for summary judgment and ultimately dismissed the present case because the contract that Plaza Carolina Mall, L.P. ("Plaintiff") sought to enforce to recover an incentive grant from the Municipality of Barceloneta ("Defendant") was found to be illegal, null and void, and, therefore, unenforceable. (Docket No. 85.)[1] Aside from addressing the merits of the parties' contentions, the court raised its concerns regarding Plaintiff's discovery violations, specifically, its failure to disclose information that would establish the existence or lack thereof of federal jurisdiction.[2] (Id. at 12-19.)

Upon finding that Plaintiff failed to comply with Fed. R. Civ. P. 26, the court afforded it an opportunity to be heard, as required by Fed. R. Civ. P. 37, and instructed the parties to show cause as to whether the issuance of sanctions against Plaintiff or his counsel, including attorney's fees, was appropriate. (See Docket No. 87.) On April 1, 2015, both parties complied with lengthy responses. (See Docket Nos. 88 & 91.) Plaintiff argues that sanctions should not be imposed on it because it did not willfully violate its discovery obligations and did not "assume a laid-back

---

[1] Said ruling was affirmed upon reconsideration. See Docket No. 106.

[2] Here, jurisdiction was premised on diversity of citizenship and Plaintiff, an unincorporated association, had failed to establish that all its partners were completely diverse. (See Docket No. 85 at 12-13.)

**Civil No. 13-1264 (GAG)**

approach with respect to either discovery or jurisdiction" and it regrets and apologizes if it has given the court a different impression. (Docket No. 88.) Opposite to Plaintiff's contention, Defendant avers that sanctions against Plaintiff and its counsel are appropriate for their discovery violations pursuant to Fed. R. Civ. P. 37 and Fed. R. Civ. P. 11. (Docket No. 91.) Defendant argues that the court's statements and conclusions in its Opinion and Order evidence serious violations and Plaintiff's disregard for the court's zealous protection of its jurisdiction. Id. at 8. Defendant also claims that Plaintiff's violations caused substantial harm to it and have no satisfactory explanation; as such, it sees no reason why the court should not impose sanctions. Id.

Although the court found that Plaintiff engaged in several discovery violations in addition to the diversity jurisdiction flop, the court will steer its sanctions discussions to those violations pertaining to the issue of Plaintiff's continued failure to disclose missing information concerning the court's federal jurisdiction.[3]

---

[3] In their show cause motions, the parties address other discovery violations which the court enumerated in its Opinion and Order and the court briefly touches on one of them. Throughout the proceedings one of the most contested facts between the parties was the occurrence of a merger between Plaintiff and another entity. (Docket No. 85 at n.5.) The merger was essential to Plaintiff's case and Defendants challenged its uncontested status because Plaintiff did not produce evidence during discovery to attest its materialization. Id; (see also Docket No. 37 at 6-7.) Plaintiff claims that it assumed Defendant was not challenging the merger and that it first learned that Defendant was indeed questioning the merger itself at summary judgment. The record depicts otherwise as it was clear that Defendant questioned whether the merger took place by requesting all documents that demonstrated the merger during discovery. (See Docket Nos. 39-4; 49-1 at 20, 25; 70 at 24.) As such, Plaintiff's contention that it first learned of the merger challenge at the summary judgment stage does not proceed. Thus, Plaintiff's proffer of the merger evidence at the summary judgment stage with readily available information that should have been produced during discovery was highly improper. (See Docket No. 49 at 4-5.) In addition, Plaintiff objected to producing the merger agreement, which would have certainly prove its materialization, with tooth and nail as a confidential document and conditioned its production to Defendant signing a confidentiality agreement. Time proved this document was not confidential because it was a public document. The exercise which led Plaintiff to find that these documents were in fact public, after the conclusion of discovery, should have been conducted during discovery and before objecting to their production.

In its show cause motion, Plaintiff recognizes that objecting to producing the merger documents was wrong but that no harm could have been caused to Defendant by this "unfortunate misunderstanding." (Docket No. 88 at 23.) Contrary to Plaintiff's contention, this was not harmless. Had Plaintiff properly established the merger's existence during discovery certain issues engulfing the merger, like the proper party to the litigation, would have been solved long before the dispositive pleading stage; therefore leaving only the ***crucial*** issues to continue past discovery.

I.    **Findings of Fact**

Plaintiff failed to make diversity jurisdiction apparent from the face of its initial pleading. (See Docket Nos. 1 & 85 at 12-13.)  Plaintiff cognizes as much and avers that its original complaint did *not* allege sufficient facts to establish diversity jurisdiction.  (Docket No. 88 at 29.) Defendant thus raised the lack of diversity jurisdiction argument in its answer to the complaint. (Docket No. 12 at 1-2.)  Defendant again conveyed the jurisdiction defect in the Joint Initial Scheduling Memorandum filed on July 13, 2013, stating that the complaint failed to show the identity and citizenship of all its members, limited and general partners.  As such, the court could not assess whether diversity jurisdiction had been established and whether the complaint should either stand or be dismissed for lack of jurisdiction.  (Docket No. 27 at 17-19.)  Defendant continued to press the issue throughout discovery.  Plaintiff admits that in Defendant's initial written request for discovery from September 17, 2013, it requested "any and all documentation you may have available with regards to diversity jurisdiction."  (Docket No. 89-4.)  On February 10, 2014, Defendant raised objections to Plaintiff's answers to interrogatory and, in pertinent part, stated that the information produced concerning diversity jurisdiction was incomplete because Plaintiff had failed to assert the diverse status of all its partners.

Plaintiff avers that on said date it "first became aware" that it "had not expressly listed the principal place of business of [one of its partners] Simon PC, Inc." (Docket No. 88 at 11.)  As such, complete diversity had not been established.  Plaintiff did not move to supplement the jurisdictional information and, on March 24, 2014, Defendant reminded Plaintiff of the pending discovery objections to which Plaintiff responded that it would "verify the objections and get back to you ASAP." (Docket No. 39-6.)  This did not happen.  In sum, Defendant alerted Plaintiff early on in this litigation and throughout discovery that diversity jurisdiction had not been established

**Civil No. 13-1264 (GAG)**

because Plaintiff had not disclosed the citizenship and principal place of business of one of its partners. On May 5, 2014, more than a year after the complaint was filed, Plaintiff finally proffered the undisclosed information in response to Defendant's summary judgment motion, via an affidavit, as a result of its request for dismissal of the case due to lack of jurisdiction. These findings are evident from the record.

**II.  Discussion**

    a. Plaintiff's Arguments[4]

Plaintiff justifies its violation by averring that the parties were focused on and preoccupied with settlement negotiations and thus could not make time to supplement the undisclosed information. (Docket No. 88 at 7.) Plaintiff thus avers that "any multiplication in the proceedings" caused by its failure to disclose is due to Plaintiff's and Defendant's "counsel perhaps misplaced confidence that an amicable resolution should be reached." (Docket No. 88.) The court disagrees. The parties cognize that the court never held the discovery deadlines in abeyance so that the parties could entertain their settlement efforts. This exercise had to be conducted at the same time and in conjunction with the parties' discovery responsibilities. The court made this clear when the parties jointly requested an extension of the discovery deadline and the court denied it. (See Docket Nos. 29 and 30.) Thus, the parties had to adhere to the discovery deadlines imposed by the court.

Though the court applauds and encourages settlement it had made clear that all discovery deadlines were not going to be stayed while the settlement discussions were taking place.

---

[4] Plaintiff's show cause motion begins with a comprehensive review of the procedural history of the case meant to provide context for the court since it "delegated the task of supervising the discovery process" to Magistrate Judge López and "took up the case again" after dispositive motions were filed. (See Docket 88 at 1.) The undersigned notes that even when in its prerogative and lawful authority it refers certain matters to any of the court's Magistrate Judges; it nevertheless maintains control over and familiarity with its Docket.

**Civil No. 13-1264 (GAG)**

Accordingly, the court cannot sympathize with Plaintiff's failure to meet its discovery obligations. The fact that the parties exerted time and effort to settle the case but an amicable resolution never came to fruition does not excuse Plaintiff's nondisclosure and failure to timely supplement the missing jurisdictional information. Counsel put most eggs in the settlement basket; however, work towards settlement cannot be so sweeping as to halt the discovery exchange or the parties' responsibilities in the litigation. Plaintiff had to place the same time and efforts to its discovery production duties and clearly it did not.

Plaintiff also attributes its failure to disclose the necessary information to establish federal jurisdiction as mere "oversights" or "drafting errors." Plaintiff admits to two mistakes: (1) an initial drafting oversight in one of the answers to interrogatories, namely, omitting the principal place of business of one of its partners, Simon P.C. Inc., and, (2) another unfortunate oversight by not supplementing its original answers to interrogatories after Defendant pointed to the missing information above before the discovery deadline elapsed. (See Docket No. 88 at 32.) Plaintiff apologizes profusely for the "complications and confusion that its omissions caused." Id.

The court takes the "drafting errors" justification at face value and will not question that the information not disclosed might have been inadvertently omitted by Plaintiff initially. What the court cannot condone is Plaintiff's approach to cure these "errors" once it became aware of them, especially given the limited nature of the missing information and that Plaintiff admits that it always possessed the information. As such, there is no plausible explanation for Plaintiff's failure to timely disclose information which was readily available and in Plaintiff's possession all along. If the nondisclosure was the product of an inadvertent error, the court fails to see why Plaintiff did not move to cure it the first time Defendant objected to the diversity jurisdiction information as incomplete. It was not until May, 2015, two months after the conclusion of discovery, and in

response to a jurisdictional challenge by Defendant in its summary judgment motion that Plaintiff finally proffered the undisclosed information. There is no justifiable excuse for making this disclosure at such belated manner. Plaintiff adds that its drafting errors were the result of a "confused and convoluted discovery process" with a focus on settlement, but as noted, this argument fails to excuse its discovery violations.

Further, Plaintiff justifies its discovery violation by resorting to the "blame game." Plaintiff points to certain instances where Defendant did not comply, one way or another, with its discovery obligations (like submitting answers to interrogatories and objections to Plaintiff's responses in a belated manner).[5] Plaintiff nevertheless affirms, in spite of this, it did not seek to impose sanctions against Defendant. The court is not a kindergarten cop that must police counsel into complying with their duties.[6]

As to Defendant's alleged discovery violations the court first notes that in the parties' joint request for extension of discovery, they noted that Defendant was still working on its responses to the interrogatories and requests for production of documents. (Docket No. 29.) However, Defendant did not raise any issues concerning Defendant's tardiness. Plaintiff's ability to manage its case could not have been jeopardized by Defendant's actions; otherwise, it would have put the court on notice and requested appropriate relief. Therefore, Plaintiff cannot cry "Defendant did it too" when it appears from Plaintiff's own actions that Defendant's purported misconduct was

---

[5] Plaintiff also claims that Defendant failed to comply with the dispositive motion deadline because it filed its summary judgment motion on April 8, 2014, but the deadline was April 7, 2014. (Docket No. 88 at 14 and 24.) The record, however, reveals that the parties requested an extension of time to extend discovery until March 18, 2014, and to file dispositive motions by April 8, 2014. (Docket No. 29) (See Docket No. 91 at 12 n. 3.) Therefore, contrary to Plaintiff's averment, Defendant's filing was timely. Further, an examination of the record reveals that Plaintiff also filed its dispositive motion on April 8, 2014. (Docket No. 34.)

[6] As always, all parties must adhere to the court-mandated deadlines, including those pertaining to discovery, and are required to engage in good faith discovery efforts. For the most part, discovery is conducted at the behest of the parties and without the court's intervention. Should a discovery issue arise, it must promptly be brought to the court's attention, especially if a party's noncompliance substantially harms the other party and its efforts to litigate their case.

6

harmless. Plaintiff moreover suggests that its nondisclosure "oversights" were "largely of Defendant's own making" because it raised its objections to Plaintiff's discovery responses in a belated manner on February 10, 2014. (Docket No. 88 at 18.) Plaintiff states that it did not focus on Defendant's untimeliness but instead it "sought to assuage the court's potential [jurisdiction] concerns" "by adding the location of the principal office of Simon PC, Inc., which had been inadvertently omitted from the initial production." Id. at 16. Plaintiff admits that it failed to provide the necessary information to establish complete diversity but nonchalantly hoped to cure the jurisdiction defect by "adding" the missing information or "minor gap" at summary judgment. Id. at 3-4.

The court notes that while Defendant may have taken longer to raise its objections to the evidentiary exchange, Plaintiff had allowed extra time for Defendant to work on its responses and, even if late, the objections were issued well within the discovery deadline. Further, and, as noted, the objected diversity jurisdiction information was readily available to Plaintiff who could have easily and promptly supplemented its answers.

Plaintiff further claims that Defendant's jurisdictional challenge was untimely because it did not file a Fed. R. Civ. P. 12(b)(1) motion to dismiss within the court's established deadline. Plaintiff further avers that because no such motion was filed it was under the "mistaken belief" that "Defendant's questions regarding diversity had been satisfied" and jurisdiction was no longer an issue in this case. (Docket No. 88 at 8, 23-24.) Jurisdiction, however, can be challenged at any time. Thus, an objection to the court's federal subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006). Moreover, throughout discovery, Defendant preserved the diversity jurisdictional challenge pointing to the missing information about Plaintiff's citizenship. The court also notes

that Plaintiff bears the burden of proving that jurisdiction exists; it is not the other way around. Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992); see also Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 702 (1st Cir. 1979) ("[T]his means that, if a plaintiff's claim of diversity is challenged, the plaintiff has the burden of proof.")

Thus, regardless of whether Defendant could have filed a motion to dismiss for lack of jurisdiction, Plaintiff had to prove that diversity jurisdiction existed when it was challenged by Defendant. Further, by its own admission, it is crystal clear that Plaintiff knew by February 10, 2014, that the jurisdiction questions still stood because Defendant raised objections to Plaintiff's discovery exchange. (See Docket No. 88 at 11.) Despite knowing that diversity jurisdiction information had been undisclosed, Plaintiff failed to proffer it without delay pursuant to Fed. R. Civ. P. 26. By not disclosing this information during discovery, Plaintiff forced the issue to continue on to the summary judgment stage.

Plaintiff next claims that it then began to supplement its responses; however, it did not have an adequate opportunity to do so, even after the close of discovery. Id. at 24. Plaintiff avers that its supplementation efforts were "cut short" by Defendant's filing of the Emergency Motion and the process of preparing a summary judgment motion. Id. at 13-14. Plaintiff asserts that with the Emergency Motion, Defendant's "cr[ied] foul" by bringing to the court's attention the discovery violations by Plaintiff. The court notes that this motion was filed a day *after* the March 18, 2015, discovery deadline, and, as such, all discovery exchange had to have been completed by then and not past the discovery deadline. Accordingly, "the rush of events that accompanied the end of discovery and the filing of dispositive motions" does not constitute valid grounds to excuse

Plaintiff's obligation to supplement evidence, especially that which Plaintiff knew was missing and which established the court's federal jurisdiction.[7]  (See Docket No. 88 at 16.)

In addition, Plaintiff implicitly faults Defendant for "simply [going] ahead" and seeking dismissal of the case for lack of diversity jurisdiction in their summary judgment motion rather than resolving the issue through a meet-and-confer process or moving for additional time to counter Plaintiff's statement of undisputed facts." Id. at 14-15.  At least as to this point, Plaintiff recognizes that "perhaps it was a mistake not to supplement its responses during that time frame [discovery]." Id. at 24.  Indeed, it was not only a mistake but a violation of the discovery rules.

The parties could have certainly coordinated meet-and-confers to resolve all discovery disputes in a quick and efficient manner, within the discovery deadline.  That way, the lack-of-jurisdiction issue would have never snowballed into the summary judgment stage.  Plaintiff notes that it was willing to engage in meet-and-confer sessions and faults Defendant for not coordinating these meetings, yet the record lacks any evidence of Plaintiff's attempts to parley with Defendant.

In short, Plaintiff was unmistakably on notice of their nondisclosures because Defendant raised the issue various time before, during, and even after the conclusion of discovery.  It is thus remarkable that Plaintiff, knowing it had not established diversity jurisdiction, waited to "assuage" the jurisdictional defect in response to summary judgment and without a substantial justification. This information should have been promptly provided after the first jurisdiction challenge by Defendant, and, at the latest, shortly after February 10, 2014.  It was not.  Instead, Plaintiff brushed off the jurisdiction challenges and *finally* established the existence of diversity jurisdiction in response to summary judgment. (Docket No. 49 at 2.)  The court stressed in its Opinion and Order the importance of good faith discovery efforts and cautioned that disclosing evidence for the first

---

[7] It seems that Plaintiff's focus was on everything but the jurisdictional issue as it states that it first focused on settlement, then the Emergency Motion and next summary judgment motions.

**Civil No. 13-1264 (GAG)**

time at the summary judgment stage, and without justification, is sanctionable and violates Fed. R. Civ. P. 26(a) and (e). (Docket No. 85.) Plaintiff nevertheless purports that its conduct was harmless because the evidence was produced "eventually" and it confirmed that the parties were completely diverse.

      b. <u>Sanctions</u>

When a party violates the automatic discovery provisions of Rule 26(a) and 26(e), subsection (c) of Rule 37 is triggered. <u>See</u> FED. R. CIV. P. 37(c). Rule 37 thus entails a "self-executing sanction for failure to make a disclosure required by Rule 26." FED. R. CIV. P. 37, advisory committee notes. Subsection (c) of Rule 37 provides, in relevant part, that if a court finds that a party fails to disclose information or make the specified discovery required by Rule 26(a) or 26(e)(1) without substantial justification, [that party] shall not, unless such failure is harmless, be permitted to use that information or witness not so disclosed. FED. R. CIV. P. R. 37(c). "**In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions**." <u>Id.</u>

Pursuant to Rule 37(c), the court maintains a variety of tools to sanction a party and the range of sanctions caused by the failure can go from the most harsh (total exclusion and dismissal of the case) to more moderate sanctions like limited exclusion or ordering payment of reasonable expenses, including attorney's fees. FED. R. CIV. P. R. 37(C)(1)(A)&(B). This gives the district court wide latitude to best match the degree of non-compliance with the purpose of Rule 26's mandatory disclosure requirements. <u>See</u> <u>Klonoski v. Mahlab</u>, 156 F.3d 255, 269 (1st Cir. 1998). District courts may impose such sanctions with an eye both to penalize the particular wrongful conduct and to deter others from engaging in the same tactics. <u>See</u> <u>Companion Health Servs., Inc.</u>

v. Kurtz, 675 F.3d 75, 86 (1st Cir. 2012). The choice of sanction thus lies in the purview of the district court. AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015).

Plaintiff's conduct frustrated Rule 26's objectives of expediting the exchange of basic information because Plaintiff did not disclose the missing jurisdiction information in a timely fashion and within the discovery deadline. Plaintiff moreover violated its obligation to supplement discovery responses, which is a continuing one. See FED. R. CIV. P. R. 26(e)(1)(A) (requiring a party to supplement its disclosure *promptly* "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other party."); Harriman v. Hancock Cnty., 627 F.3d 22, 29 (1st Cir. 2010). See also Sheek v. Asia Badger, Inc., 235 F.3d 687, 693 (1st Cir. 2000) (the continuing duty to disclose promotes the broader purpose of discovery, which is "the narrowing of issues and the elimination of surprise"); Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) (highlighting that courts attempt "to ensure that the spirit of open discovery embodied in Rule 26 is not undermined either by evasion or dilatory tactics.").

What the district court must find under Rule 37(c) is that the offending party was not "substantially justified" in failing to disclose information required by Rule 26(a) or Rule 26(e) and that the failure to disclose was not harmless. Ortiz-Lopez v. Sociedad Esp. de Auxilio Mutuo Y Beneficiencia de P.R., 248 F.3d 29, 33 (1st Cir. 2001). The First Circuit has established a non-exhaustive list of factors for the courts to consider when assessing whether to impose Rule 37 sanctions, some substantive and others procedural. AngioDynamics, Inc., 780 F.3d at 435; Vallejo v. Santini–Padilla, 607 F.3d 1, 8 (1st Cir. 2010). Specifically, the First Circuit calls on district courts to weigh the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice

to the other party and the operations of the court, and adequacy of lesser sanctions. AngioDynamics, Inc., 780 F.3d at 435. On the procedural side, a court must consider whether the district court gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of a penalty. Id.

Here, Plaintiff's deficiencies in its answer to interrogatories and failure to supplement the incomplete answers flies in the face of the purpose of the mandatory full disclosure requirements of Rule 26(a)(2), which Rule 37(c) is intended to uphold and facilitate. See FED. R. CIV. P. 26 advisory committee's note; Ortiz-Lopez, 248 F.3d at, 35; see also Richard M. Heimann & Rhonda L. Woo, Import of Amended Federal Rule of Civil Procedure 26(a), 506 PLI/Lit 279, 293 (July-Aug.1994) (stating that the availability of the automatic sanctions pursuant to Rule 37(c)(1) "put[s] teeth into the rule"). In addition to the discovery violations, Plaintiff also failed to meet its burden of establishing federal jurisdiction by failing to establish diversity jurisdiction in its initial pleading and then continuously failing to supplement the missing information promptly.

As to the first prong, Plaintiff's actions are not substantially justified. Plaintiff's excuses, which the court amply discussed above, do not amount to reasonable justifications. As discussed previously, early on in the proceedings Plaintiff was put on notice that a lack of jurisdiction issue existed because it did not disclose the required information to assert its partners' diverse status. Plaintiff was moreover reminded of its nondisclosure throughout discovery, yet it was not until it responded to Defendant's lack of jurisdiction argument at summary judgment that Plaintiff finally disclosed the missing information. There is no justifiable explanation as to why this quintessential information was not provided shortly after Plaintiff knew it had been "inadvertently omitted," especially given the nature of the information and the fact that it was well within the Plaintiff's possession. Plaintiff's arguments that "brother counsel did it too," that the discovery process was

complicated, and that the nondisclosure was a drafting error or "oversight," rather than amounting to just cause, further reinforces the court's concerns regarding Plaintiff's relaxed approach to discovery vis-a-vis federal jurisdiction.

As to the second prong, the court finds that Plaintiff's conduct was not harmless. To the extent that Plaintiff's failure to disclose the aforementioned information created a disadvantage or harmed Defendant's ability to defend itself against Plaintiff's allegations, this failure is necessarily attributed to and must be borne by Plaintiff alone. Ortiz-Lopez, 248 F.3d at 33-34. By supplying the undisclosed information in response to summary judgment—after discovery had concluded—Defendant was unable to assess the veracity of the information belatedly produced and conduct its own diversity jurisdiction assessment. Defendant was out of time, due to no fault of its own, to properly ascertain the truthfulness of the new information provided and weigh whether the information provided by Plaintiff indeed cured the jurisdictional defect.

Plaintiff's nondisclosure moreover catapulted the jurisdictional issue, with all its ensuing discovery complications, thereby multiplying the court's work. Plaintiff's conduct is thus not harmless. It forced Defendant to brief and the court to discuss the lack of jurisdiction argument because Plaintiff repeatedly failed to produce the necessary information to assert that all its members, including limited partners, were completely diverse. Both Defendant and the court wasted time and resources addressing a jurisdictional issue which should have never arisen in the first place if Plaintiff had adhered to the discovery rules. This could have certainly been avoided if Plaintiff had properly established federal jurisdiction at the outset. Had Plaintiff complied with its discovery obligations, neither the court nor the parties would have had to address the lack-of-jurisdiction issue or now the issuance of sanctions.

**Civil No. 13-1264 (GAG)**

Although the court does not make a finding of bad faith here, nevertheless, there was garden-variety carelessness. Even if such carelessness or negligence caused Plaintiff's violations, rather than willful intent or disregard to the court's federal jurisdiction, the bottom line is that Plaintiff's violations affected Defendant and multiplied the court's work. Though it may have not been deliberate, Plaintiff's Rule 26 violations had the effect of "stonewalling" and frustrated effective discovery and the progress of the case. See Companion Health Servs., 675 F.3d at 85.

In sum, over the course of the litigation, Defendant repeatedly warned Plaintiff that the diversity jurisdiction information it produced was deficient. As such, Plaintiff's proffer of the undisclosed information long after discovery concluded, and in response to summary judgment in an effort to save itself from dismissal for lack-of-federal jurisdiction constitutes a sanctionable discovery violation. Plaintiff's discovery violations are greater than missing a single production deadline, but rather constituted a pattern of violations concerning highly relevant information pertaining to federal jurisdiction. Its actions frustrated the purpose of candid, quick, and cost-efficient discovery and have no legitimate or mitigating explanation. The discovery violations by Plaintiff harmed Defendant's ability to defend itself against the belated disclosure and the district court's proceedings. See Angio Dynamics, Inc., 780 F.3d at 435. The factual findings discussed above demonstrate a disregard to the discovery rules. This well-developed record points to conduct that is constitutive of discovery violations and imposing a sanction onto Plaintiff is "well within the district court's scope of discretion." Ortiz-Lopez, 248 F.3d at 35.

### III. Conclusion

Plaintiff's failure to lodge a justifiable excuse for its Rule 26 violations, and the harm caused to Defendant and to the court, warrants that Plaintiff reimburse Defendant with the expenses, costs, and fees associated with its efforts to try to obtain the undisclosed jurisdictional evidence and to pursue and develop the lack of jurisdiction argument. (See Docket No. 91 at 17.)

**Civil No. 13-1264 (GAG)**

According to Defendant's invoices, the Municipality of Barceloneta was charged 25.52 attorney hours in connection with these efforts, which amounts to $3,440. Id. The court thus imposes the above monetary sanction payable to Defendant within 30 days as of the date of this order.[8]

The sanction imposed today is not based on a single Rule 26 violation but a continuing one. This sanction is far from drastic, but nonetheless plays a "constructive role in maintaining the orderly and efficient administration of justice." See AngioDynamics, Inc., 780 F.3d at 436.

As a final note, the court hereby **DENIES** Defendant's request for the imposition of attorney's fees and/or prejudgment interest pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Rules 44.1(d) and 44.3(b) of the Puerto Rico Rules of Civil Procedure. (Docket No. 91 at 17.) The court finds that Plaintiff and its counsel were neither obstinate in raising their arguments nor did they act in a vexatious manner in this litigation. The sanction imposed above against Plaintiff sufficiently affords relief to Defendant without it being greater than necessary

**SO ORDERED.**

In San Juan, Puerto Rico this 13th day of July, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[8] If Plaintiff intends to appeal this sanction order, it may, in the alternative, deposit said sum with the Clerk of the court.